Smith v. Richardson.

---

### SIMEON SMITH *v.* JOHN G. RICHARDSON.

Where, in answer to an interrogatory, a party states facts not necessarily connected with that as to which he was interrogated, such irrevalent matter will be struck out, on motion.

Defendant promised, in writing, to pay to plaintiff, on a day fixed, a certain sum, in molasses at the market price. It was proved that, a few weeks before the time of payment, defendant wrote to plaintiff, requesting him to send, as soon as possible, casks in which to receive the molasses, as defendant apprehended that the cistern which contained his molasses would burst. Plaintiff did not send for the molasses, and, a few days after the debt was payable, defendant's cistern bursted, and the molasses was lost. In an action against defendant for the amount so promised: *Held*, that admitting plaintiff was bound to furnish the casks, a mere notice to send them, without specifying any time at which the delivery was proposed to be made, is not a sufficient tender to place the molasses at his risk. Judgment for plaintiff for the amount claimed, payable in molasses, at the market price, at the time of payment.

APPEAL from the District Court of St. Mary, *Boyce*, J.

MORPHY, J. This action is instituted on a written obligation, in the words and figures following, to wit:

$437 37.                    Franklin, May 18th, 1839.

On, or before the first day of January next (1840), I promise to pay to Simeon Smith, or order, in good merchantable mo-

lasses, at the market price, the sum of four hundred and thirty-seven 37-100 dollars, with interest at ten per cent per annum from this date until paid, for value received.

J. G. RICHARDSON.

The defendant answers that, although he did execute the note sued on, he is in no way liable for the same ; that, as it appears upon the face of the instrument, it was to be paid in molasses, on or before the first of January, 1840, which he was ready and anxious to deliver, both before, and at the time agreed upon ; that previously thereto he addressed to the plaintiff several letters, in which he informed him that his molasses cistern was weak, and that unless he should comply strictly with his part of the contract, by sending for the molasses, serious injury might happen to him (the defendant) by the bursting of his cistern, which, in fact, did take place after the first of January, 1840, by which he sustained a heavy loss, amounting to one thousand dollars, which would have been avoided by the plaintiff's complying with his contract. The defendant concludes by praying to be dismissed, with costs, and to have a judgment in reconvention against the plaintiff, for the sum of $1000. There was below a judgment of non-suit, from which the plaintiff appealed.

On interrogatories being propounded to the plaintiff, to ascertain whether he did not receive, previously to the 1st of January, 1840, from defendant, or his son acting for him, letters, in one of which he was apprised of the weak condition of defendant's cistern, and requested to send, without delay, casks or barrels to receive the molasses, he answered by filing in court a letter in the following words, to wit :

Mr. SIMEON SMITH :

Dear Sir—My father has been expecting your casks for his molasses for a week ; if he does not receive them soon his cistern will be in a bad situation. Please attend to it as soon as possible, and believe me, dear sir, Yours,

F. D. RICHARDSON.

December, 19th, 1839.

The plaintiff stated, under oath, that this letter was the only one in his possession relative to the casks, adding, that he was

firmly under the impression that, previously to the date of this letter, he received another one from F. D. Richardson, request-ing him to send casks, as he apprehended that his father's cistern would run over; but he positively denied ever being requested to receive defendant's molasses, or ever being notified in any manner or form, (otherwise than contained in the letter filed,) at any time, of defendant' being ready or willing to deliver mo-lasses, adding, that the molasses was called for by captain Havens, in the usual time of delivery.    The latter part of this answer was, on motion, stricken out, as not being closely linked to the fact upon which the plaintiff was interrogated, and the latter took a bill of exceptions.    We think that this part of the answer stated a distinct and different fact from that upon which the interrogatory was based, and not necessarily connected with it.    The one was in relation to a notice given to the plaintiff, of the defendant's readiness to deliver the molasses; the other relates to an actual call for the molasses, subsequently made by an agent of the plaintiff, as to which fact he was not interro-gated.

The evidence shows, in substance, that, in 1839, the defend-ant made between 140 and 150 hogsheads of sugar, and that there is generally about fifty gallons of molasses made from each hogshead of sugar.    That defendant's molasses was con-tained in two cisterns, a large and a small one; that in Decem-ber, 1839, Stansberry, the overseer, told defendant that if some-thing was not done with the molasses it would be lost, because the large cistern, which was under ground, would not stand the pressure upon it, being nearly full.    To this the defendant an-swered, that he was waiting for the plaintiff to send him some casks, and was expecting them daily.    A few days after, in the beginning of January, a message was brought to the defendant and the overseer, that the cistern had bursted and was leaking. On reaching the sugar house they found that the large cistern had given way, that the molasses was oozing out of the cistern, and the water outside running in from above.    Nearly all the molasses was lost, except the contents of the small cistern. The overseer states, that the cistern was an old one, made of cypress; that when he examined it, for the purpose of repairing

it, he found that the grooves at the bottom had given way. There was in it a rent of several inches long, in which he could stick his fingers, and he tried to stop it after the molasses had run out.

D. Olivier testified, that he made the sugar of Richardson in 1839. The cistern gave way in consequence of the pressure of the molasses on it. He saw the cistern after it had bursted; very little was left in it. There was in the large cistern the molasses of about one hundred hogsheads of sugar. No good molasses was saved out of this cistern, because it was mixed with water, even before it got full of molasses. He had observed that it leaked, and had cautioned the defendant to get some of it taken out. This warning was given in December, 1839.

Penn declared that he went to Franklin, where the plaintiff resides, in the latter end of December; that Richardson sent word by him to Smith, that his cistern was full, and that he wished him to send up some casks, and that Smith answered, he would send up the casks as soon as the boat of Milcheltre should go by.

Isaac A. Tuttle said, that he was present when the plaintiff made a demand of the defendant, for the payment of the note sued on, in February, or in the spring of 1840, and that he refused to settle, saying that his cistern had burst, and that he had lost his molasses. When a crop of molasses is sold, without any understanding as to the casks, it is admitted to be customary in the country for the buyer to furnish them, to be filled on the plantation of the seller, and delivered on the bank of the water course; until which delivery, says one of the witnesses, they are considered at the risk of the seller.

The question which arises, under these facts and the nature of the defendant's obligation, is, at whose risk, was the molasses, which he was to give in payment of his debt, when the loss occurred? No sale of molasses took place between these parties. The relation between them was that of debtor and creditor simply; but the debtor had stipulated that he should have the privilege of paying in good merchantable molasses, on or before the 1st of January, 1840. If, at that time, or after, or before, he was desirous to pay, and his creditor refused to receive his

payment, his course was a simple one ; he had only to make a legal tender of the thing, by the delivery of which he could discharge himself. A great deal has been said, and many authorities referred to, in relation to the manner of putting a debter *in mora* ; but, in our opinion, they have little to do with the present case. The putting *in mora* is a proceeding to which the creditor resorts, when he wishes to compel his debtor to perform his contract, or, in default thereof, to pay damages ; while a legal tender is a means given to the debtor to discharge himself from his obligation, by placing the thing to be delivered at the risk of the creditor. A mere notice to the plaintiff to send the casks, admitting that he was bound to furnish them, is not such a tender as could place at his risk the molasses he was to receive in payment. The formalities to be observed by a debtor, in making a tender to his creditor, are laid down with great precision in the Code of Practice. " If the debt be for a specific thing, or for a quantity of any kind of moveable property, which cannot be easily transported, or which are to be delivered at a place designated in the contract, or necessarily indicated by the nature of the obligation, the debtor must give previous notice, in writing, to the creditor that, on such a day and hour, he shall be at the place where the things to be tendered are deposited, in order rhere to make a delivery of the same to him." Code of Practice, art. 408. "After such notice, the debtor, or his agent, must, on the day and at the hour appointed, be present at the place where the property to be delivered is deposited ; and there, in the presence of two witnesses residing in the place, make a real tender of the same to the creditor, by showing them, if he be present, and designating them to him, and by offering to deliver the same to him immediately." Art. 409. "If the creditor refuse to accept the real tender thus made to him, or does not attend on the day, hour, and at the place designated," &c. "the debtor will have the option, either to retain such property in his possession until the creditor demands the same judicially, or to deposit it at the charge and risk of such creditor." Art. 412. The following articles point out the manner of depositing the property, and declare that if it perishes, be spoiled, or its value be diminished, without any fault on the part of the debtor, the loss shall fall on

Smith v. Richardson.

the creditor, if the tender be adjudged valid. Arts. 413, 414. In the present case, the notice or letter to the plaintiff specifies no time at which a delivery is proposed to be made ; it merely requests him to send casks, and apprises him of the bad condition of defendant's cistern. This the plaintiff did not, and could not consider as a proceeding putting at his risk the molasses, in case he did not immediately go with, or send his casks to receive it. His note had not yet matured, and he did not perhaps consider the danger of a loss, resulting from defendant's cistern being filled, as great as it really was, from its defects and crazy condition. It is shown that the cistern had been leaking for some time, and that the molasses was mixed with water before the cistern was full. This probably created fermentation in it, and caused it to burst. This accident, which happened a few days after the first of January, 1840, might as well have happened a week or two sooner. It resulted from the bad condition of the cistern, which the defendant had been repeatedly cautioned to relieve from the pressure upon it. Not having received any casks from the plaintiff, he should have procured other casks, or taken the necessary steps to avoid the loss. Not having done so, he cannot now be permitted to throw it upon the plaintiff, at whose risk the molasses never was. The obligation of the defendant has, in our opinion, remained in full force, and he is bound to pay it ; but he has not, we think, lost the privilege of discharging it in molasses at the market price of January, 1840, which the testimony shows to have been sixteen cents per gallon.

It is, therefore, ordered that the judgment of the District Court be reversed, and that the plaintiff do recover of the defendant four hundred and thirty seven dollars and thirty seven cents, with interest at the rate of ten per cent per annum, from the 18th of May, 1839, until paid, with costs of suit ; and that he, the defendant, be allowed the privilege of satisfying this judgment by delivering to the plaintiff, on or before the first day of January, 1846, good merchantable molasses, at the rate of sixteen cents per gallon.

*Maskell*, and *T. H.*, and *W. B. Lewis*, for the appellant.

*Voorhies*, for the defendant.