Hon. R. H. MARR,
Hon. A. DeBLANC,
Hon. W. B. EGAN,  } *Associate Justices.*
Hon. W. B. SPENCER,

---

### No. 657.

### McLEAR & KENDALL vs. SUCCESSION OF J. L. HUNSICKER.

A motion to strike out the answers of a witness, as irrelevant, or not responsive, should be passed on by the court separately, as a preliminary matter, and not referred to the merits.

The answers of witnesses, if practicable, should amount to mere admissions, or denials. Every thing additional will be stricken out, except such statements of fact as are explanatory of, and "closely linked" with the questions propounded.

In the absence of proof to the contrary, it will be presumed that notaries of other States have no greater powers than are possessed by those of this State.

When extracts from commercial books are ordered by a court, they must be *literal transcripts* from the books, not accounts based on the books.

APPEAL from the Fourteenth Judicial District ·Court, parish of Ouachita. *Ray,* J.

*Franklin Garrett,* for plaintiffs and appellees.

*Morrison & Farmer,* for defendant.

### ON REHEARING.

The opinion of the court was delivered by

MANNING, C. J. This suit is upon four promissory notes. The defense is payment, to sustain which the defendant propounded interrogatories to the plaintiffs.

The first is—"Examine the fourteen letters and two receipts hereto annexed. Was not each one of said letters and receipts written by your firm or by direction of your firm?" The answer of each plaintiff covers fifteen pages of the transcript. It commences : " Each of the fourteen letters and two receipts was written by the firm of McLear & Kendall or by their direction, under the following circumstances :" and then follows a narrative of all the business transactions between plaintiffs and defendant's intestate, commencing two years before the first purchase that is included in this suit. All the facts, events, and circumstances are recited with amazing amplitude of detail ; rules of law governing the imputation of payments are announced, and copious quotations from the correspondence of the parties are inserted. It is, in fact, such a statement of their case as is appropriately placed in what we call a " brief," or written argument on the facts and the law.

The defendant moved to strike out the whole answer, save only the first two lines, ending with the word "direction," on the ground that the answer is not responsive to the interrogatory, and this motion was referred to the merits. This was improper. The motion was a preliminary to the trial, and should have been heard and decided before that began. The defendant's reserved bill requires us to review the further question whether that part of the answer to which she objected should have been stricken out.

In answering a question, the interrogated party must simply confess or deny the fact, but may nevertheless state some other facts tending to his defense, provided they be closely linked to the fact on which he has been questioned. Code of Practice, art. 353. The scope and meaning of this descriptive phrase "closely linked," as defining the relation which the facts stated bear to the fact about which the party is interrogated has received numerous adjudications. Jocum vs. Roy, 3 Martin, 410 ; Wells vs. Hickman, 6 Rob. 2; Baker vs. Garlick, 9 Rob. 127; Smith vs. Richardson, 11 Rob. 518; Williams vs. Vance, 2 Annual, 910; Hoover vs. Miller, 6 Annual, 205; Owen vs. Brown, 13 Annual, 201. If the answer states a distinct and separate fact from that upon which the interrogatory is based, and not necessarily connected with it, or if he states a legal consequence following upon facts, the answers will be excluded, and, *a fortiori*, will the answer be stricken out where a series of acts, in no way connected with or linked to the manual signing of a paper, are detailed with an intent too obvious to be mistaken. The motion of the defendant should have been sustained.

Notwithstanding the expressions used by this court in ordering objectionable parts of answers to be "stricken out," the plaintiffs' counsel contends that it can not be done, but only that such objectionable parts may be disregarded. And he bases this upon another proposition—that

the answers to interrogatories on facts and articles form part of the record, and need not be offered in evidence. This last is indisputable, but it means that those answers only form part of the record which are held and received by the court as legal and proper answers. When this court uses and repeats the expression, that answers or parts of answers are ordered to be "stricken out," the meaning is that the clerk should not copy them in the transcript, even with lines drawn across them as was done here. And the plaintiffs anticipated this manner of executing the order of the court, as is apparent by their attaching the excluded answers to a bill of exceptions, taken to the refusal of the judge to permit them to offer those answers in evidence.

It is apparent that if the plaintiffs could not be permitted to go beyond the limits of a responsive answer to the interrogatory which probed their conscience, they could not use the excluded answers of themselves as original testimony, and the court properly excluded them. There is little excuse for a party, interrogated on facts and articles, now to go beyond, or to attempt to go beyond, a categorical answer, or the statement of facts closely linked with that about which he is asked. When this form of obtaining the statement of' one's adversary in a suit at law was introduced in our practice but few persons had conceived, and still fewer would have approved, the innovation of permitting a party to testify in his own behalf. When a profound thinker first startled the legal profession with the enunciation of this as a proper rule to apply to the investigation of legal contestations, it was pronounced a heresy with exceptional unanimity. So rapid has been the progress of legal reform in that direction that not only were parties permitted to testify in our courts when both were alive and present, by the law of 1867, but even when the lips of one had been sealed by death, the law of the following year (Acts 1868, p. 269; Civil Code, art. 2260 as amended by new number 2281), permitted the surviving adversary to testify—an enlargement of the rule the sound policy of which may well be doubted, and which is at variance with the reason on which the rule is founded.

The plaintiffs had but to take their own testimony under commission, when they found their debtor was restricting their freedom of reply by binding them with the legal withes of a peculiar and technical kind of interrogatories.

The defendant now moved that the plaintiffs produce in court extracts from their books, or sworn copies of their accounts with him, and this was granted. A few days afterward the plaintiffs filed these extracts and copies, from which it appeared that the oath, by which they were verified, was administered by one Puhl, a notary public, who also signs as commissioner, and in the recital of his jurat states himself to be special commissioner appointed by the court of Ouachita to take the oath of plaintiffs.

There is neither order of the judge, designating him as special commissioner by name, nor commission addressed to him as such, and therefore his power to receive the oath would rest upon his official capacity as notary public. We must assume that notaries in Delaware could only do such official acts as notaries could do under our law, there being nothing shown to the contrary, and it was not until the present year' that those officers were empowered to receive oaths or acknowledgments. Acts 1877, p. 10.

The defendant, treating the copies filed by plaintiffs as having no legal existence, by reason of their want of a legal affidavit, moved the court to take the statements of her own affidavit of what she expected to prove as confessed. Her affidavit had disclosed what she had expected to prove by the copies which she was calling for. The court refused her motion, and she complains.

The rule of law which permits a party to take his own averments and allegations *pro confessis* when his adversary is derelict in not complying with the order of court is made to prevent any delay or evasion of a compliance with that order. In this case the plaintiffs had complied with extraordinary celerity, and had furnished defendant with what purports to be the account of the parties, and the incapacity of the officer who administered the oath was the objection to it as a proper compliance with the order.

Another ground for the motion was that the papers filed by the plaintiffs were not extracts from their books, nor sworn copies thereof, but a statement of accounts. An examination of all of the accounts thus filed countenances this allegation, but does not substantiate it. The plaintiffs are not permitted to restate their account with the defendant, or to put it in the shape they think it ought to be, but they must comply with the order which calls for extracts from or copies of their books. It is the account as it appears on their books, with all the mistakes of their bookkeeper, that is wanted, and that must be supplied. It is probable that the books will show that the cheque on Bethlehem bank for five hundred dollars was credited on the first-maturing note in this suit, as it ought to be, since the plaintiffs' letter distinctly imputes the payment then made to that note. The evidence in this record satisfies us that the plaintiffs are not entitled to the judgment awarded them in the lower court, and the last letter written by the deceased to his creditors equally shows that the judgment of our predecessors in favor of the defendant is not correct.

On the last day of April, 1873, Hunsicker wrote the plaintiffs: "I could not blame you for being angry with me for not lifting the notes you hold against me. I have tried in vain thus far to raise any money. I have offered heavy interest, but the money is not in the country. * * * I

own some fine property, there is no better in this place, but I could not to-day sell for half its value. I am under many obligations to you for waiting on me so long, and God knows that I would not swindle you out of one cent. If I die, you are bound to be paid. Yours is a debt that I will pay if I never pay any others."

This is not the language of a man who owes nothing to the person to whom he is writing, and it is only the fact that he owed nothing that could justify a judgment in his favor. He died three months afterward.

We shall remand the case. Our review of the rulings of the district judge will enable the court that shall hear the new trial to dispose properly of such issues, if they shall be raised again, and as the new transcript will contain nothing but the pleadings, process, and the testimony of that trial, with the orders and judgment and minutes of the court, or, in other words, will not be incumbered with the evidence in this record, we shall be able to arrive at a juster judgment than we can now pronounce.

It is therefore ordered, adjudged, and decreed that the decree heretofore rendered by this court, and the judgment of the lower court, are avoided and reversed, and the cause is remanded to the district court to be heard anew, and to be proceeded with according to law, the plaintiffs and appellees to pay costs of appeal.